(83 South. 14)

No. 23323.

BOWMAN v. BOARD OF COM'RS OF FIRE DEPARTMENT OF CITY OF NEW ORLEANS et al.

(June 30, 1919.    Rehearing Denied Oct. 14, 1919.)

*(Syllabus by Editorial Staff.)*

MUNICIPAL CORPORATIONS 863—COMMISSIONERS OF FIRE DEPARTMENT OF NEW ORLEANS MAY CONTRACT DEBTS PAYABLE IN THE FUTURE.

The board of commissioners of the fire department of the city of New Orleans created by Act No. 159 of 1912, being City Charter, § 17, with duties as prescribed by Act No. 58 of 1916, §§ 1–16, is not a "municipal corporation" under Act No. 32 of 1902, prohibiting contracting debts payable out of revenue for future years, but is a separate legal entity from such city, not created by or under authority of its commission council, or Charter, § 1, and is not within the constitutional amendment proposed by Act No. 4 of 1916 (Ex. Sess.) §§ 12, 20, prohibiting such city from incurring debts without sufficient funds in the treasury at the time to meet the same.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Municipal Corporation.]

Dawkins, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Suit by Dr. Albert G. Bowman against the Board of Commissioners of the Fire Department of the City of New Orleans and another. Judgment for defendants, and plaintiff appeals. Affirmed.

M. M. Boatner, of New Orleans, for appellant.

I. D. Moore, City Atty., and John F. C. Waldo, Asst. City Atty., both of New Orleans, for appellees City of New Orleans and another.

Hall, Monroe & Lemann, of New Orleans, for appellee White Co., intervener.

PROVOSTY, J.   In this suit a citizen and taxpayer seeks to annul a contract by which the White Company, of Cleveland, Ohio, is to furnish to the board of commissioners of the fire department of the city of New Orleans "22 automobile combination pumping engines and hose wagons at $7,700 each, or $169,400.00; 3 gasoline automobile combination service ladder trucks at $7,834.00 each, or $23,502.00; 2 chassis and motors for hose wagons at $4,139.00 each, or $8,278.00"— payable in greater part out of the revenues of said board for future years as follows: 10 per cent. of the purchase price cash on delivery; the balance in six or less annual payments bearing 5 per cent. interest from date.

Act 32, p. 39, of 1902 (amended by Act 128, p. 199, of 1910), forbids "municipal corporations" from incurring any debt payable out of revenues of future years, except that municipalities are allowed to make an estimate of the excess of the future revenues above statutory, necessary, and usual charges, and incur debt to the extent of this excess by dedicating this excess to the payment of the debt.

And by amendment to the Constitution proposed by sections 12 and 20 of Act 4 of the Extra Session of 1916, it is provided as follows:

"Sec. 12. Except as otherwise provided in this amendment, the city of New Orleans shall not borrow money, issue bonds, notes or other evidences of indebtedness or pledge its credit or anticipate the collection of any of its taxes. * * * Nor shall said city make any contract or incur any debt or obligation for any purpose whatsoever unless sufficient funds, not otherwise appropriated, to pay and discharge same are actually in the treasury of said city at the time of making the contract or incurring the debt or obligation and are specifically set aside and dedicated to said purpose. * * * ·

"Sec. 20. The inhibition herein established against the city of New Orleans and the board of directors of the public schools, parish of Orleans, or either of them, borrowing money, anticipating their revenues, capitalizing their funds or issuing notes of other evidences of debt, shall apply to all boards, commissions or bodies created by or under the authority of the com-

missions council of the city of New Orleans, or its successor as the governing body of said city."

The contention of plaintiff is that the defendant board is but an instrumentality of the city government, a component part of the legal entity known as the "city of New Orleans"; that a debt incurred by it is a debt incurred by the city of New Orleans; and that therefore this case comes within the prohibition of said statute and of said constitutional amendment, in view of the fact that the said debt is thus sought to be created payable out of future revenues without being restricted to excess of revenues and without dedication.

On the other side, the contention is that said board is a legal entity separate from the municipal corporation known as the city of New Orleans; and that it is not "created by or under the authority of the common council of the city of New Orleans," and therefore does not come within the said prohibitions.

Said board is created by, and exists under the authority of, section 17 of the City Charter (Act 159, p. 253, of 1912), reading:

"There shall be, and there is hereby created, constituted and established, a board of commissioners of the fire department of the city of New Orleans, which shall be composed of the mayor, the commissioner of public safety and one other commissioner selected by the commission council. The powers, duties and rights of the board of fire commissioners above provided for, shall remain as now prescribed by Act 58 of 1910 of the General Assembly of the State of Louisiana, and all acts amendatory thereof."

Said Act 58 of 1910 (page 93) provides as follows:

"Section 1. There is hereby created, constituted and established a board to be styled the board of commissioners of the fire department of the city of New Orleans, to be organized as hereinafter provided, and to be vested with powers and charged with the duties hereinafter specified."

Section 2 provides for the constitution of the board; the term of office; the oath to be taken; the filling of vacancies; the manner of removal; the holding of meetings; appointment of a treasurer and secretary.

Section 3 reads, in part: "That the board of commissioners of the fire department of the city of New Orleans shall provide supplies, tools, implements, horses, and apparatus of any and all kinds to be used in the extinguishment of fires, and for the maintenance of the fire department in a thorough and efficient state; to buy, sell and repair, and for the care of the same, and to take any and all action in the premises. All real estate, fire apparatus, hose, implements and tools now used by the fire department in the city of New Orleans belonging, or that may hereafter belong to the city of New Orleans, shall be in the keeping and custody of the said board of commissioners, and it shall be the duty of the city of New Orleans to provide suitable quarters for all the fire companies now existing or which may be hereafter created. The said board of commissioners shall have power to rearrange the location of companies, and it shall be competent for the said commissioners at any time in their judgment to send any steam fire engine, hook and ladder truck, chemical engine, hose or other apparatus, to the relief of any community in the state of Louisiana. Said board shall have power and authority to increase the number and salaries of all officers, members, stokers, drivers, pipemen, and laddermen, and of all other employés and attachés of said fire department.

"Said board shall, on or before the first day of December, in each year prepare and submit to the City Council of the city of New Orleans an estimate of the whole costs and expense of providing for, running and maintaining the fire department of the city for the following year.

"The council of the city of New Orleans shall set aside in the annual budget of expenditures of the city of New Orleans a sum equal to that required by the estimate of said board, provided that said council shall have a right to reduce said estimate whenever the revenues of the city will not justify or permit the said appropriation, and provided further, that one-twelfth of the amount so budgeted by the city council shall be paid monthly by the city treasurer to the said board of fire commissioners, the said amount to be distributed by the treasurer of said board under their direction, upon vouchers properly certified to by the president or acting president of said board of fire commissioners and by the secretary thereof.

"The secretary shall keep a voucher book in which he shall keep a correct record of all amounts paid out, the funds to which it is chargeable, and the person to whom payable.

"The said board of commissioners of the fire department of the city of New Orleans shall on or before the first Monday in November of each year make a report in writing to the council of the city of New Orleans of the property and financial condition of the fire department of the city of New Orleans."

Section 4 reads, in part:

"That the chief engineer, assistant·engineers, captains, lieutenants, engineers of engines, stokers, drivers, pipemen, laddermen, and master machinist and his two assistants, of the present fire department, be retained in their respective positions; that the board of fire commissioners shall have power and authority to al int a secretary, treasurer, department physician, veterinary surgeon, and all employés other than members of the active fire force of the fire department of the city of New Orleans, - * * * and that said board may appoint as many officers, members of the department and employés as may be necessary, and to fix their compensation. * * *

"The terms of office of all officers and employés of the fire department shall be perpetual unless removed for cause, as provided for in this act.

"All vacancies in the active fire force of the fire department of the city of New Orleans shall be filled as follows: The chief engineer from assistant engineers; assistant engineers from captains; captains from lieutenants; master machinists and assistant master machinists from engineers; engineers from stokers; and lieutenants from members of the active fire force of the fire department."

Section 5 provides for the powers and duties of the chief engineer.

Section 6 reads, in part:

"That all members of this department shall be required to be constantly on duty and subject to all rules and regulations established by the commissioners."

Sections 7, 8, 9, 10, 11, 12, 13, and 14 contain nothing having any bearing on the present case.

Section 15 reads, in part:

"The commission hereby created may adopt a common seal and direct its use, and in the name of the board of fire commissioners may institute and maintain suits and proceedings at law and in equity, and may pay costs and expenses of judgments therein for the enforcement of its rights and contracts and for the protection, possession and maintenance of property under its control. The city attorney of the city of New Orleans shall be ex officio the legal adviser of said board."

Section 16 requires the city of New Orleans to provide such offices and business accommodations as may be necessary to the board.

The said board, therefore, is not created by or under the authority of the commission council of the city of New Orleans, and consequently does not come within the prohibition of the said constitutional amendment. . That it is a separate legal entity from the municipal corporation known as the city of New Orleans is, in our opinion, beyond serious dispute. It is said by the act of its creation hereinabove transcribed, to be "created, constituted and established" and to have "the same powers, duties and rights" as the board of same name provided for by Act 58 of 1910. The latter act speaks of the board it provides for as being "organized" with certain specified powers and duties, among which are those to buy and sell, to make contracts, to sue and to be sued, to appoint officers and to act through them, and to exercise certain specified functions. That such a legal entity as this fulfills all the conditions for being a corporation is too plain for discussion.

And, in fact, we do not understand the learned counsel for plaintiff as contesting that point, but as contending: That, fictively separate though this legal entity be from the other legal entity known as the corporation of the city of New Orleans, yet the two constitute in reality but one, since the said board is but one of the instrumentalities of one of the branches of the city government. That by section 4 B of the City Charter "the executive and administrative powers, authority and duties in said city shall be distributed among five departments." That one of these departments is that of "public safety." That

by section 12 of the Charter the duty or function of "fire prevention and relief" is assigned to the said department of public safety; and, finally, that by section 6 of the Charter it is provided that—

"The commission council" (which is now the governing body of the city) "shall have power and it shall be their duty to pass such ordinances, and see to their faithful execution, as may be necessary and proper:

"(5) To adequately provide for the maintenance of an efficient police force and fire department."

And that therefore, while said board may be a corporation, it is but one of the city functionaries.

In this contention, counsel is in one sense well founded; but not in the sense that the said board is a municipal corporation, coming, as such, within the prohibition of the said Act 32 of 1902, or that the actions of said board are merely those of the city of New Orleans in the sense of the acts of an agent being those of the principal. Said act aims at those governing bodies of parishes, cities, and towns which wield the power of taxation, representing the inhabitants of their parishes, cities, and towns, and authorized to bind them and engage their financial faith and honor. Said act has no reference to such special boards or agencies as the Legislature of the state may create for the discharge of special functions. Such boards, when endowed at all with the power of entering into contracts, are necessarily limited in their engagements to the alimony allowed them under the law of their creation. The board in question in this case, for instance, makes "an estimate" of the amount it will require for meeting its necessary expenses of the year, and the common council of the city lets it have the amount called for by this estimate, subject to reduction whenever the revenues of the city will not allow of the full amount being given. Any contract it may make is necessarily restricted to this allowance, and to whatever property or means of a private nature it may possess. Such a board, while the functions which it discharges are in their nature municipal, yet has an autonomy of its own, independent altogether of the governing authority of the municipality. The situation would naturally be different if such board were the creature of the municipality; for then the situation would simply be that the municipality was acting through the board, as a principal through an agent. And that is the reason why the prohibition of the said constitutional amendment is made to include "all commissions or bodies created by or under the authority of the commission council."

It will be noted that in its expenditures and modes of action the said board is fully and completely autonomous; altogether independent of the commission council. The commission council has no check or control whatever over the expenditures, or contracts, of said board, and must abide by the estimates made by said board, unless "the revenues of the city will not justify or permit of said appropriation."

Section 1 of the City Charter reads, in part:

"All the inhabitants of the parish of Orleans [within certain boundaries which are the boundaries of the parish] are hereby created a body corporate and established as a political corporation by the name of the 'city of New Orleans,' with the following powers."

Plaintiff's learned counsel refers to this, and argues that what in the Constitution and statutes is meant by the city of New Orleans is all the inhabitants and territory within the limits of the parish of Orleans, organized for the purposes of orderly functioning and administration into the entity answering to the designation of the city of New Orleans; and that the said board and any other similar subsidiary corporations which might be created as aids to the city government are

only component parts of the organism; and that it is the organism that is aimed at by the said prohibitions.

Here again we say that in theory all this may be true enough, but that the prohibition of said statute is aimed only at police juries and town councils and other like functionaries, having charge of the taxing power; and that the said constitutional amendment is aimed at only the like authorities for the city of New Orleans, and at the boards specially referred to in the amendment.

Judgment affirmed.

O'NIELL, J., concurs in the decree.
DAWKINS, J., dissents.
MONROE, C. J., takes no part.